# Illinois Official Reports

## Appellate Court

---

### *People v. Patterson*, 2017 IL App (3d) 150062

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. BRIAN D. PATTERSON, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-15-0062 |
| Filed<br>Modified upon denial<br>of rehearing | September 6, 2017<br><br>October 27, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Peoria County, No. 13-CF-1080; the Hon. Kevin Lyons, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier, Peter A. Carusona, and Mark D. Fisher, of State Appellate Defender's Office, of Ottawa, for appellant.<br><br>Jerry Brady, State's Attorney, of Peoria (Patrick Delfino, Lawrence M. Bauer, and Thomas D. Arado, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

JUSTICE O'BRIEN delivered the judgment of the court, with opinion.
Justices Lytton and Schmidt concurred in the judgment and opinion.

**OPINION**

¶ 1		The defendant, Brian D. Patterson, appealed his conviction for burglary of an Arby's.

¶ 2						FACTS

¶ 3		The defendant was charged by indictment with burglary (720 ILCS 5/19-1(a) (West 2012)). The indictment alleged that the defendant knowingly and without authority entered an Arby's on August 25, 2013, with the intent to commit theft.

¶ 4		On September 22, 2014, with a second addendum filed on October 9, 2014, the defendant filed a motion to preclude the prosecution from introducing evidence of phone calls downloaded from the defendant's cell phone. The State argued that the phone calls were downloaded pursuant to a search warrant and by way of a recording application on the defendant's phone that was not placed there by police. The defendant argued that the recording application was not placed by the defendant, alleging that it was placed on his phone by the FBI. Defense counsel had subpoenaed a witness who would say the FBI had approached her regarding the defendant, but the witness did not appear. The trial court set the motion hearing over until the following Tuesday, the same day the trial was scheduled to start. On Monday, the defendant filed a motion to suppress, arguing that the recording application was placed on his phone by persons in the government. On Tuesday, prior to trial, the trial court denied the motion to suppress, based upon the proffer of evidence in court and the untimeliness of the motion. The State claimed that it had contacted a federal agent, but he was not available on that day to rebut any evidence by the defendant. The defense witness again did not appear, but defense counsel said her testimony would be about the FBI approaching her and asking her to make a phone call to the defendant so the FBI could listen in. Her testimony would not be about the application on the defendant's phone. The defendant did not attempt to subpoena the FBI agent.

¶ 5		The case proceeded to a jury trial. Ryan Litchfield testified that he arrived for work at Arby's at around 4:50 a.m. on the morning of August 25, 2013. He had a key to get in the building, and he thought only two people had keys to the building on that day. He did not look at the safe until around 6 a.m., when he let a coworker in, who noticed two holes in the side of the safe. Litchfield also noticed metal shavings around the safe but did not see any footprints in the shavings. Jessica Appel, the shift manager at Arby's, testified that she arrived at work that morning around 7:50 a.m. She noticed the holes and opened the safe to find the money from the night before was missing. Appel had no personal knowledge of the amount of money in the safe because she did not work the night before, but she checked the company's records and found that $400 was missing. Appel called the police. Appel testified that she had a key to the building, and she thought that six people had keys, including the manager who had been let go four days earlier.

¶ 6    The police investigated at the Arby's and took photographs of the scene. The police did not find any fingerprints or footprints and did not find any signs of a forced entry. After the defendant became a suspect, the police obtained a search warrant and searched the defendant's home and his vehicle. The trunk of the defendant's vehicle contained a drill, an extension cord, charger battery, sledge hammers, a chisel-type tool, grinding wheels, drill bits, flashlights, a lock pick set, pliers, and cutting shears. There were also gloves, a black backpack, a black duffle bag, black pants, and plastic bags. A cell phone was recovered from the defendant's person, and files were downloaded from the phone and placed on a flash drive. Around 100 recorded calls were downloaded from the phone. Four recordings were made in the early morning hours of August 25, 2013, and those four files were renamed by the police but not altered. The testimony was that those four calls were made at 2:09 a.m., 2:25 a.m., 2:38 a.m., and 3:28 a.m. on August 25, 2013.

¶ 7    The defendant testified that he was a senior software engineer and he wrote books on computer programming and database design. He testified that on August 25, 2013, he was working and hanging out with a friend. He was familiar with the Arby's but did not go there that morning. He testified that he exchanged messages with his girlfriend, Angelique Brachle, in the early morning of August 25 and the four recorded phone calls were between him and Brachle. The defendant testified that he was in his garage for the fourth call and he made a snide remark at the end of the call for the FBI, who he believed had been listening to his calls since May 2013. That remark is not on the audio of the fourth call. The defendant testified that the fourth call was just for the benefit of the FBI, wherein he and Brachle were pretending to commit some sort of theft. He did not know who installed the third-party recording application on his phone. He did go to the Arby's a few days after August 25 because he heard it had been broken into.

¶ 8    Brachle testified that she was probably with the defendant on the morning of August 25, and she could not recall if they went to the Arby's that morning. However, she was currently on probation because she had pled guilty to the burglary of the Arby's. She testified that she went with the defendant to the Arby's one night after dark, but she could not remember the specific day. She waited in the car while the defendant went up to the building. He was carrying a backpack, and it was after the Arby's had closed. She saw him go toward the building and later come back and get in his own car a few rows down from hers. Brachle testified that the defendant was doing research for a book. Brachle thought that the fourth phone call was made while they were both at home and the defendant was in the garage, and the conversation about a robbery was made up for the FBI.

¶ 9    The jury returned a verdict of guilty of burglary. The trial court denied the defendant's motion for a new trial. The defendant was sentenced to 21 years in prison, and his motion to reconsider sentence was denied. The defendant appealed.

¶ 10                                          ANALYSIS

¶ 11   The defendant argues that the trial court abused its discretion in not granting a continuance, that he was denied a fair trial when the trial court ruled that testimony was inadmissible hearsay, that he was denied a fair trial in the giving of two additional jury instructions, and that his sentence was excessive.

¶ 12                                    I. Continuance

¶ 13    The defendant argues that the trial court abused its discretion in declining to continue a hearing on his motion to suppress or continue the trial, after a key witness was unavailable to testify regarding the motion to suppress on the morning of trial. The State argues that the defendant never asked for a continuance and that the motion to suppress was properly denied. A judge's decision regarding a motion to continue is reviewed for an abuse of discretion. *People v. Walker*, 232 Ill. 2d 113, 125 (2009).

¶ 14    Whether there has been an abuse of discretion in denying a continuance depends upon the facts and circumstances in each case, and there is no bright line test for determining when a denial in the interests of judicial economy violates the substantive right of the accused to properly defend. *Id.* at 125-26. A trial court does not have a *sua sponte* duty to continue a case. *People v. Minter*, 2015 IL App (1st) 120958, ¶ 74.

¶ 15    The defendant argues that the cell phone audio files were really the only evidence against him and there were discovery delays and technical difficulties that contributed to the delay in filing his motion to suppress. Defense counsel had received the audio by September 22, 2014, but was unable to play the tape. On October 9, the State's motion for a continuance was denied, and the defendant filed a motion to bar evidence, including the recorded phone calls. At the hearing on October 10, defense counsel stated that he wanted to question the officer who downloaded the calls but the officer was on vacation and that defense counsel had subpoenaed a witness who had been approached by the FBI to have a conversation with the defendant, but she was not present in court. The trial court scheduled a hearing on the motion prior to the start of the trial on October 14, 2014. The defense then filed a motion to suppress on October 13. At the hearing on October 14, the prosecutor told the judge that the FBI agent alleged to have placed the application on the defendant's phone was involved in training in Washington, D.C. Defense counsel stated that his witness again did not show up and her testimony would be that the FBI approached her and wanted to listen in to a conversation between her and the defendant. The trial court denied the motion to suppress, finding that there had already been too many delays and the defendant's witness would not be able to provide any testimony regarding the application.

¶ 16    The defendant argues that the State asked for the continuance when it stated that the FBI witness would not be available. There is no indication that the State asked for such; in fact, its own motion had been denied a week earlier. The trial court actually denied the motion to suppress on the basis that the defense witness, even if she was to appear, was not expected to offer any information regarding the application on the defendant's cell phone. The defendant failed to offer any evidence regarding the application on his cell phone, which was necessary to sustain his burden of proof on a motion to suppress evidence. *People v. Cregan*, 2014 IL 113600, ¶ 23. Of note, the defendant did not make an offer of proof about the testimony that was not admitted, and no subpoenas were issued by the defendant to secure the FBI agent. Under the facts and circumstances of this case, where the defendant took no steps to present any evidence specifically relevant to the application on his cell phone, we find no abuse of discretion in the trial court's decision to not continue the suppression proceedings.


¶ 17                                    II. Hearsay

¶ 18    The defendant argues that the trial court abused its discretion in not allowing testimony revealing his state of mind when defense counsel asked why the defendant and his girlfriend

would make up a robbery for the benefit of the FBI and would go to this extent and call the FBI agent names in the recorded cell phone calls. The defendant argues that this testimony would have been the defendant's explanation why the FBI was listening in on his phone calls. The State argues that the defendant did not include this issue in his posttrial motion, so it can only be reviewed for plain error, and the defendant failed to make an offer of proof regarding the testimony. The State also argues that there was no abuse of discretion, since a trial court's evidentiary rulings are reviewed for an abuse of discretion. *People v. Caffey*, 205 Ill. 2d 52, 89 (2001).

¶ 19     The defendant acknowledges the forfeiture and asks for plain error review. A reviewing court may consider a forfeited error when the evidence is close, regardless of the seriousness of the error, or if the error is serious, regardless of the closeness of the evidence. *People v. Herron*, 215 Ill. 2d 167, 186-87 (2005). To obtain relief under this rule, a defendant must first show that a clear or obvious error occurred. *People v. Hillier*, 237 Ill. 2d 539, 545 (2010).

¶ 20     The hearsay rule generally prohibits the introduction of an out-of-court statement to prove the truth of the matter asserted. *People v. Spicer*, 379 Ill. App. 3d 441, 449 (2007). There is an exception to the hearsay rule that allows the statement if it is a statement of the declarant's then-existing state of mind, emotion, sensation, or physical condition. Ill. R. Evid. 803(3) (eff. Apr. 26, 2012).

¶ 21     The defendant testified that it was his understanding that the FBI was listening to his telephone calls. The defendant's attorney asked the defendant what the FBI agent had said about the defendant that would prompt the defendant to call the FBI agent names on the audio recordings. The State objected when the defendant answered, "What I heard or what I was told?" Defense counsel argued that the testimony was admissible as a state of mind exception to the hearsay rule, but the trial court sustained the objection.

¶ 22     It is unclear what the testimony would have been, but on plain error review, the defendant had to show that the evidence was closely balanced. See *People v. Lewis*, 234 Ill. 2d 32, 43 (2009) (the defendant carries the burden of persuasion under both prongs of the plain error rule). Reviewing courts must undertake a commonsense analysis of all the evidence in context when determining if evidence is closely balanced. *People v. Belknap*, 2014 IL 117094, ¶ 50. The defendant argues that the evidence was closely balanced because he offered a different explanation for the audio and that was the only evidence against him.

¶ 23     Although there was no eyewitness testimony, the audio recordings captured the defendant's actions on August 25, 2013. The audio recording that captured the burglary in progress contains an ongoing conversation between the defendant and Brachle. The conversation is broken up by sounds of cutting or sawing, and at one point the defendant states that he hit a shelf and needed to drill another hole. Supporting that evidence were the burglary tools found in the defendant's trunk, including a drill, grinding wheels, drill bits, and a lock pick set, and the testimony by Litchfield that there were two holes drilled in the Arby's safe. Applying a commonsense analysis, we find that the evidence was not closely balanced and the defendant cannot prevail on plain error.

¶ 24                                    III. Jury Instructions

¶ 25     The defendant argues that two jury instructions should not have been given because they had no application to the case and tended to undermine Brachle's testimony. The defendant acknowledges that both issues were forfeited and argues for plain error review. The State

contends there was no error or any error was not prejudicial. The first step of plain error review is determining whether there was error. *People v. Thompson*, 238 Ill. 2d 598, 613 (2010).

¶ 26        The jury in this case was instructed that a witness's credibility could be challenged by evidence that the witness made a prior inconsistent statement, and it was further instructed that it could consider the prior inconsistent statement as substantive evidence if the witness made the statement under oath, the statement described an event that the witness had personal knowledge of, and the statement was acknowledged under oath by the witness. See Illinois Pattern Jury Instructions, Criminal, No. 3.11 (4th ed. 2000) (hereinafter IPI Criminal 4th No. 3.11). During the jury instruction conference, the trial court asked when the prior inconsistent statement happened at the trial. The State responded that the instruction was based upon Brachle's admission that she told police that she acted as a lookout for the burglary of the Arby's. Specifically, when the prosecutor asked Brachle if she told police that she acted as the lookout for the burglary of the Arby's, she responded "I wasn't sure exactly what was going on because I thought we were doing research. I really didn't think anything was going on." The State argues that this was an inconsistent statement because Brachle did not deny that she made the statement that she was the lookout for the Arby's burglary to the police. The defendant argues that the State failed to provide evidence of a prior inconsistent statement and Brachle's failure to deny making the statement to the police was not enough.

¶ 27        In criminal cases, evidence of a statement made by a witness is not made inadmissible by the hearsay rule if it is inconsistent with his testimony at trial and the statement narrates, describes, or explains an event or condition of which the witness had personal knowledge and the witness acknowledged under oath the making of the statement. 725 ILCS 5/115-10.1 (West 2012). IPI Criminal 4th No. 3.11 instructs jurors that they can consider prior inconsistent statements substantively if the jurors find that the requirements of section 115-10.1 have been met. To be inconsistent, a witness's prior testimony does not have to directly contradict the testimony given at trial but may include evasive answers, silence, or changes in position. *People v. Flores*, 128 Ill. 2d 66, 87 (1989). Whether the prior testimony is inconsistent with the trial testimony is a question left to the discretion of the trial court. *Id.* at 87-88. In addition, a trial court's decision to give a particular jury instruction is reviewed for an abuse of discretion. *People v. Mohr*, 228 Ill. 2d 53, 66 (2008).

¶ 28        We find that the trial court did not abuse its discretion in giving the jury instruction because Brachle's answer regarding whether she was the lookout for the robbery was evasive. Brachle did not deny that was the statement that she gave to the police but qualified her answer with the fact that she thought they were doing research. Brachle acknowledged telling the police that she waited in the car for some time, at night, while the Arby's was closed, while the defendant went to the Arby's building. Since there was no error in giving the instruction, there can be no plain error.

¶ 29        The defendant also argues that the trial court abused its discretion in giving IPI Criminal 4th No. 3.17, testimony of an accomplice. "The test for determining whether a witness is an accomplice for purposes of the accomplice-witness instruction is whether there is probable cause to believe that the witness was guilty of the offense at issue as a principal, or as an accessory under an accountability theory." *People v. Caffey*, 205 Ill. 2d 52, 116 (2001). Thus, if the evidence at trial establishes probable cause to believe that a witness participated in the planning or commission of the crime, even if the witness denies it, the accomplice-witness instruction should be given to a jury. *Id.* In this case, Brachle testified that she was the lookout,

although she claimed that she thought she was only acting as such so that the defendant could do research for a book. However, she also admitted that she pled guilty to charges in connection with the burglary of the Arby's and that she was on probation for the offense. Thus, we find that the evidence established probable cause to believe that Brachle participated in the burglary of the Arby's and the trial court did not abuse its discretion in giving this instruction. Again, since there was no error in giving the instruction, there was no plain error.

¶ 30                                   IV. Sentence

¶ 31     Finally, the defendant argues that his 21-year sentence was excessive and should be reduced. Alternatively, the defendant argues that the case should be remanded for resentencing because the trial court considered an improper factor in aggravation and failed to consider applicable mitigation. The imposition of a sentence is reviewed for an abuse of discretion. *People v. Patterson*, 217 Ill. 2d 407, 448 (2005).

¶ 32     The statutory sentence for burglary, a Class 2 felony, is probation or three to seven years' imprisonment. 720 ILCS 5/19-1(b) (West 2012); 730 ILCS 5/5-4.5-35 (West 2012). However, due to prior burglary convictions in 1992 and 1994, the defendant was subject to a Class X sentence, between 6 and 30 years' imprisonment. 730 ILCS 5/5-4.5-25(a) (West 2012). The defendant's sentence of 21 years was within the statutory range, but the defendant challenges it as excessive.

¶ 33     Generally, trial courts have great discretion in sentencing. *People v. Alexander*, 239 Ill. 2d 205, 212 (2010). The defendant was charged with burglary, which requires proof that the defendant entered with the intent to commit a theft. The defendant argues that there was nothing unusual, remarkable, or aggravating about this burglary, and the planning emphasized by the trial court was an inherent element of burglary so that the trial court was wrong to consider it an aggravating factor. A review of the record, however, reveals that the trial court appreciated the intent and planning necessary to sustain a conviction for burglary but found this case to be somewhat unusual and remarkable. The trial court emphasized that there could be a "difference between a burglary and a burglary."

¶ 34     The defendant also argues that the trial court relied upon matters outside the record, namely, the judge's personal experience as a prosecutor, in rejecting defense counsel's attempt to minimize the defendant's prior burglary convictions as a factor in mitigation. A sentencing determination made by a trial court based upon its own private investigation constitutes a denial of due process of law. *People v. Dameron*, 196 Ill. 2d 156, 171-72 (2001). Viewing the trial court's comments in context, however, reveals that the trial court considered and rejected the defendant's attempts to minimize his prior convictions, and there is nothing in the record to establish that the trial court impermissibly considered a fact outside the record in reaching its sentencing decision. We find no abuse of discretion and affirm the defendant's 21-year sentence.

¶ 35                                   CONCLUSION

¶ 36     The judgment of the circuit court of Peoria County is affirmed.

¶ 37     Affirmed.